UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CLAUDETTE BOOTHE,

Plaintiff,

                - against -

ROSSROCK FUNDS II LP, FLUSHING
SAVINGS BANK, JAMES ROSS, JAMES H.
ROSS, JASPAN SCHLESINGER LLP, "GILL
CASTRO" known as "GILL CASTRO,"
FRANK DELL'AMORE, KEVIN ETZEL,
GREGORY CERCHIONE, ET AL., JOHN
DOES 1-100, all persons unknown, claiming
any legal or equitable right, title, estate, lien, or
interest in the property described in the
complaint adverse to plaintiff's title or any
cloud on plaintiff's title thereto,

                                    Defendants.
-------------------------------------------------------x

**NOT FOR PUBLICATION**


**MEMORANDUM & ORDER**
16-CV-900 (PKC)

PAMELA K. CHEN, United States District Judge:

On February 23, 2016, *pro se* plaintiff Claudette Boothe ("Boothe" or "Plaintiff") commenced this action against Defendants Rossrock Funds II LP ("Rossrock"), Flushing Savings Bank ("Flushing Bank"), James Ross, Jaspan Schlesinger LLP, Gill Castro, Frank Dell'Amore, Kevin Etzel, Gregory Cerchione, and John Does 1–100.[1] (Dkt. 1.) On March 9, 2016, Plaintiff filed an Amended Complaint (Dkt. 7), which includes more than 200 pages of exhibits, and asserts the following five claims: (1) 42 U.S.C. § 1983 ("Section 1983") claim based on the alleged

---

[1] James Ross is the principal of Rossrock. (Dkt. 33-1 ("Schwartz Decl.") ¶ b.) Jaspan Schlesinger LLP is counsel to Rossrock. (*Id.* ¶ c.) Gill Castro is "employed by Rossrock in its management of [one of Rossrock's property that is at issue in this case.]" (*Id.* ¶ c.) Frank Dell'Amore is an attorney and Partner at Jaspan Schlesinger LLP. (*Id.* ¶ d.) Kevin Etzel is an attorney and associate at Jaspan Schlesinger LLP. (*Id.* ¶ e.) Gregory Cerchione is an individual who was appointed as the referee by the Supreme Court of New York, Kings County to handle the foreclosure sale of the property at issue in this case. (*Id.* ¶ f.)

violation of Plaintiff's "rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments"; (2) Section 1983 abuse of process; (3) violations of 42 U.S.C. § 1985(3) "Civil Rights Conspiracy"; (4) violation of the New York State False Claims Act; and (5) violation of the New York City False Claims Act.[2]

On August 1, 2016, Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). For the reasons stated below, the Court finds that Plaintiff's federal claims are barred by the *Rooker–Feldman* doctrine. Accordingly, the Court grants Defendants' motion to dismiss. Furthermore, the Court grants Defendants' motion to impose a filing injunction on Plaintiff, as set forth at the conclusion of this Memorandum & Order.

## BACKGROUND[3]

This action arises out of a dispute between Plaintiff and Defendants regarding real property at 3221 Church Avenue, Brooklyn, NY (the "Brooklyn Property"), which Plaintiff once owned,

---

[2] The Court notes that the caption page of the Amended Complaint lists the following ten causes of action: (1) Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) Fraudulent Conveyance, (3) Real Estate Fraud, (4) Fraud Upon the Court, (5) Malicious Falsehood, (6) Civil Harassment, (7) Professional Negligence, (8) Unconscionability, (9) Abuse of Process, and (10) Quiet Title. However, the body of the Amended Complaint itself sets forth, and provides allegations supporting, only five causes of action. Specifically, the Amended Complaint labels "Count 1" as "Violations of 42 U.S.C. § 1983", "Count 2" as "Violations of 42 U.S.C. § 1985," "Count 3," as "New York False Claims Act, N.Y. State Fin. Law §§ 189.1.(a)-1.(d), 1891.1(g)," and "Count 4" as "New York City False Claims Act, NYC Admin Code §§ 7-803(a)(1)-(a)(4), 7-803(a)(7)." Although Plaintiff appears to assert new factual assertions and claims in her opposition papers, the Court does not consider them because they are outside the pleadings. *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015) (citing, *inter alia*, *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading[s] for purposes of Rule 12(b).")).

[3] The facts are taken from the Amended Complaint. The Court also takes judicial notice of court documents related to Plaintiff's previous State and federal court actions for purposes of

but was purchased by Rossrock at a foreclosure sale. As described below, this dispute has been

heavily litigated in New York State court, the United States Bankruptcy Court in this district (the

"Bankruptcy Court"), and this Court.

## I.     Prior State and Federal Court Actions

In 1992, Plaintiff bought the Brooklyn Property for $185,000. (Dkt. 7 ("Am. Compl.") ¶

17.) In 2004, Plaintiff sold the property to a Carlos Toledo ("Toledo") for $400,000. (*Id.* ¶ 18.)

Toledo obtained a mortgage on the Brooklyn Property from Flushing Bank for $300,000 (the

"Note") and tendered Plaintiff and her husband, Andre Audige,[4] a check in the amount of

$100,000, which bounced. (*Id.*) After several failed attempts by Plaintiff to secure the balance of

the agreed-upon sale price of the Brooklyn Property, Toledo deeded the Brooklyn Property back

---

providing the procedural history of this case and establishing the existence and legal effect of the documents. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Assn'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

As previously noted, Plaintiff has submitted an Amended Complaint with more than 200 pages of exhibits. Defendants also submitted nine exhibits along with their motion to dismiss and a declaration in support of their motion to dismiss. However, much of Defendants' assertions in the declaration will not be considered by the Court as Defendants do not provide support for them. (Dkt. 33-1, Schwartz Decl.) For example, it is alleged in Defendants' declaration that Plaintiff and her daughter executed a deed in which they added Plaintiff's husband as an owner of the Brooklyn Property, without the consent of Rossrock (*id.* ¶ 11), and that Plaintiff and her family members have filed bankruptcy filings that caused cancellation of at least seven scheduled foreclosure sales (*id.* ¶ 12). Notably, none of these statements are supported by any documents identified by Defendants or this Court. At this stage, the Court must accept the factual allegations in the Amended Complaint as true and must draw all reasonable inferences in favor of Plaintiff, *see Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), especially when Defendants fail to direct the Courts' attention to documents containing judicially noticeable facts.

[4] While the Amended Complaint does not identify Plaintiff's husband by name, the Court infers from documents submitted by both parties that Andre Audige is Plaintiff's husband. Moreover, Plaintiff does not dispute Defendants' statement that Andre Audige is her husband.

to Plaintiff.[5]  (*Id.* ¶ 19.)  From that point on, Plaintiff assumed the obligation of making payments on the Note to Flushing Bank.  (*Id.*)

On December 4, 2007, Flushing Bank commenced a foreclosure action as to the Brooklyn Property (the "Foreclosure Action") in New York State Supreme Court, Kings County, under Index No. 44329/2007.  (*See* Def. Ex. B (Judgment of Foreclosure and Sale); *see* docket for *Rossrock Fund II LP v. Toledo*, No. 44329/2007 (N.Y. Sup. Ct.).)   This Foreclosure Action was brought against, *inter alia*, Plaintiff, Toledo, and Jody Ashton, who appears to be Plaintiff's daughter.[6]  (*See* Def. Ex. B.)  Plaintiff alleges that Rossrock has an arrangement with Flushing Bank, where Flushing Bank "ensnare[s] and entrap[s] unwary and unwitting borrowers," causing them to default, thereby allowing Rossrock to acquire those mortgages at "a bargain price" once they become delinquent.  (Am. Compl. ¶ 23.)  Plaintiff alleges that Rossrock engages in "well[-]orchestrated RICO activities."  (*Id.* ¶ 24.)  On August 2, 2012, the court entered a Judgment of Foreclosure and Sale (the "Foreclosure Judgment").  (*See* Def. Ex. B.)  Plaintiff alleges that before this occurred, Flushing Bank "failed to process mortgage payments on time, and then used it as an excuse to charge late fees in order to initiate foreclosure proceedings."  (Am. Compl. ¶ 22.)

In 2007, Flushing Bank assigned the Note to Rossrock.  (*Id.* ¶ 21.)  Plaintiff alleges that this assignment was "illegal," "fraudulent," and had "forgery [written] all over it."  (*Id.* ¶ 8.)[7]

---

[5] The Amended Complaint does not specify when Toledo deeded the property back to Plaintiff.

[6] Although the Amended Complaint does not allege any facts regarding Jody Ashton, Defendants submitted a declaration attesting to Jody Ashton's identity (*see* Dkt. 33-1 ¶ 8), and Plaintiff does not dispute Defendants' allegation that Jody Ashton is Plaintiff's daughter.

[7] Plaintiff more specifically alleges that the assignment was "illegally notarized" by "Roxana Varella and Francis W. Korzekwinski [the executive Vice President of Flushing Savings Bank] . . . *See* Exhibit ___[.]"  (Am. Compl. ¶ 8.)  Notably, there is a blank space next to the "Exhibit" she cites to, and thus the Court cannot determine what, if any, exhibit Plaintiff proffers in support of this assertion.  Plaintiff further alleges that an unidentified court "further sanctioned

Starting in 2012, Plaintiff filed four Chapter 13 bankruptcy petitions in addition to an adversary proceeding under the Federal Rules of Bankruptcy Procedure, Rule 7001.[8] On October 23, 2012, Boothe filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). *See* docket for *In re Claudette Boothe*, No. 12-47480 (Bankr. E.D.N.Y.). On November 30, 2012—after Boothe filed a voluntary application for dismissal—the bankruptcy petition was dismissed. (*Id.*, Dkts. 14, 16.)

On January 29, 2014, Boothe filed a second Chapter 13 bankruptcy petition under case No. 14-40363 in the Bankruptcy Court. *See* docket for *In re Claudette Boothe*, No. 14-40363 (Bankr. E.D.N.Y.). On February 7, 2014, Rossrock moved "for an order granting it relief from the automatic stay pursuant to Sections 362(d)(1), (2) and (4) of the United States Bankruptcy Code . . . ." (*Id.* Dkt. 34.) On May 6, 2014, the Bankruptcy Court granted the motion and permitted Rossrock "to pursue all of its rights under applicable state law with respect to the property located at 3221 Church Avenue, Brooklyn, New York 11226 . . . ." (*Id.*; Def. Ex. C ("Stay Relief Order").) The Bankruptcy Court further ordered that no future bankruptcy filing for the next two years would stay any scheduled foreclosure sale. (*Id.* ("[T]his order shall be binding in any other case under Title 11 purporting to affect [the Brooklyn Property] filed not later than 2 years after the date of entry of this Order . . . .").) Again, after Boothe's application for dismissal of her petition, the

---

this behavior [of illegal notarization] by ignoring the evidence of the fraud when it was raised by the plaintiff on many occasions." (*Id.* ¶ 12.)

[8] Rule 7001 of the Federal Rules of Bankruptcy Procedure defines an "adversary proceeding" to include ten types of proceedings and includes, for example, any action where the plaintiff seeks determination of "the validity, priority, or extent of a lien or other interest in property," or determination of "dischargeability of debt."

second bankruptcy petition was dismissed on November 18, 2014. *See* docket for *In re Claudette Boothe*, No. 14-40363 (Bankr. E.D.N.Y.).

On June 17, 2015, Boothe filed her third voluntary petition in the Bankruptcy Court for relief under Chapter 13 of the Bankruptcy Code. That case was dismissed on August 21, 2015, for failure to make plan payments. *See* the docket for *In re Boothe*, No. 15-42833 (Bankr. E.D.N.Y.). The case was terminated on February 9, 2016. *Id.*

On November 2, 2016, Boothe also filed a suit in the Bankruptcy Court against the same Defendants in this case alleging, *inter alia*, false pretenses, false representation, fraud, and willful and malicious injury. *See* docket for *Boothe v. Rossrock Funds II LP*, No. 1-16-01175 (Bankr. E.D.N.Y.). The Bankruptcy Court held a hearing on December 20, 2016, and the case was closed on April 7, 2017. *Id.*[9]

In addition to her filings in the Bankruptcy Court, Plaintiff also filed three other actions in this Court relating to the Brooklyn Property. On July 13, 2015, Plaintiff appealed the Bankruptcy Court's decision in bankruptcy case No. 15-42833. *See* docket for *Boothe v. Rossrock Fund II LP*, No. 15–cv–04099 (E.D.N.Y.). On December 17, 2015, Boothe filed an emergency motion seeking immediate stay of the sale of the Brooklyn Property and asking this Court to void the Foreclosure Judgment. (*Id.* Dkt. 10.) By the time this Court had issued an order directing that the sale of the Brooklyn Property be stayed to the extent that the sale had not yet occurred (*see id.* 12/17/2015 Order (the "December 17 Order")), Rossrock had successfully bid on the property. (*Id.* 12/23/2015 Order).[10] Plaintiff alleges that on December 17, 2015, Defendants conspired with the referee at

---

[9] It appears that no written opinion was issued by the Bankruptcy Court as one is not available on the Bankruptcy Court's Docket.

[10] Defendants allege that "[o]n December 1, 2015, . . . [Judge Partnow] issued a temporary restraining order which . . . directed that any application, order to show cause, motion or request for a temporary restraining order seeking to stay, cancel, or otherwise affect the foreclosure sale

the foreclosure auction and "illegally sold" the Brooklyn Property. (Am. Compl. ¶ 32.)[11] On January 14, 2016, this Court clarified that the December 17 Order "did not take effect because it was issued after the [foreclosure] sale had already occurred. Nevertheless, the Court issued a new stay preventing transfer of [the Brooklyn Property] until January 26, 2016," based on the parties' representation that the State court was to resolve Plaintiff's challenge to the foreclosure sale by that date. (*Id.* 1/14/2016 Minute Entry.) On January 22, 2016, the Court dismissed Plaintiff's bankruptcy appeal finding that it lacked subject matter jurisdiction and "terminat[ed] its January 14, 2016 stay preventing transfer of [ ] [the Brooklyn Property] and all other restrictions on Rossrock's possession of the property." (*Id.* 1/22/2016 Order.)

On January 26, 2016, in an action commenced by Plaintiff's husband, Andre Audige, in New York Supreme Court, the Honorable Mark Partnow issued an order confirming that Rossrock was the owner of the Brooklyn Property. (Def. Ex. F.) However, on February 8, 2016, the Civil Court of the City of New York, Kings County, Housing Part O ("Civil Court") issued a Decision/Order After Inquest ("February 8 Order"), which noted that Boothe represented to the Civil Court that she, her daughter (Jody Ashton), and her husband (Andre Audige) were the owners of the Brooklyn Property, that Plaintiff had resided at the property for at least three years, and that Rossrock merely had a lien against the property. (Def. Ex. G at 2.) Plaintiff represented to the

---

of the Brooklyn Property be presented only to Hon. Mark I. Partnow for consideration (the "December 1 TRO").

[11] Additionally, Plaintiff includes a myriad of other accusations unaccompanied by any factual allegations; for instance, that: (1) the Note assignment was "notarized by a notary who never witnessed the signatures that they notarized" (*id.* ¶ 31), (2) mortgage and note assignments or foreclosure documents were fabricated (*id.* ¶¶ 29–31), (3) Rossrock reneged on some unidentified "agreement[s]" with Plaintiff (*id.* ¶ 28), and (4) Rossrock used fraudulent mortgage assignments and fraudulent documents to foreclose on "hundreds of commercial properties in and around Brooklyn" (*id.* ¶ 29).

Civil Court that on February 4, 2016, Plaintiff was locked out of the Brooklyn Property by Rossrock. (*Id.*) Moreover, Plaintiff represented to the Civil Court that "she [was] not the subject of a current or former summary proceeding with the named respondents or any parties which provided for a final judgment of possession." (*Id.*) Based on Plaintiff's representation, the Civil Court awarded Boothe possession of the Brooklyn Property. (*Id.* at 3.)

Then on February 22, 2016, Judge Partnow, who presided over the Foreclosure Action, vacated the February 8 Order by the Civil Court finding, *inter alia*, that Boothe had not properly served Rossrock in seeking repossession of the Brooklyn Property.[12] (Def. Ex. H.) In an order dated February 23, 2016 ("February 23, 2016 Order"), Judge Partnow scheduled a contempt hearing for May 3, 2016,[13] and directed the clerk of the court to "reject any application seeking to affect the foreclosure sale of [the Brooklyn Property] . . . conducted on December 17, 2015, or which seeks to affect Rossrock['s] . . . rights as owner of [the property] . . . <u>without</u> prior leave of the Honorable Mark I. Partnow." (Def. Ex. I at 1–2.) The order further stated, "Claudette Boothe, Jody Ashton[,] and any other person with notice of this order are hereby prohibited from filing any motions, applications, orders to show cause or any other requests for relief in any court other than the Supreme Court of King County[,] which seek[s] to affect Rossrock['s] rights as the owner of . . . [the Brooklyn Property] . . . , without any prior permission of [Judge Partnow.]" (*Id.* at 2.) Nevertheless, that same day, Boothe filed the instant action. (Dkt. 1 of No. 16–cv–900.)

On April 18, 2016, Boothe, Ashton, Audige, and other named individuals and entities filed a notice of removal with this Court seeking to remove Rossrock's State court action against them

---

[12] The February 22, 2016 Order also states that "Any new case brought [by Boothe] must take into account the [previous] Supreme Court Orders." (Def. Ex. H.) However, it is unclear as to which Supreme Court Orders the February 22, 2016 Order refers to.

[13] The parties have not provided facts as to the outcome of the contempt hearing.

that was before Judge Partnow. *See Rossrock Funding II LP v. Boothe*, No. 16–cv–1878, 2016 WL 1588117 (E.D.N.Y. Apr. 20, 2016). Rossrock alleged, in its State court complaint, that Boothe, Ashton, and Audige had "executed various documents falsely claiming to be record owners of [the Brooklyn Property] . . . *after* title . . . had been transferred to [ ] Rossrock" following the foreclosure sale. *Id.* at *1. This Court remanded the case back to the State court, finding that there was an insufficient factual relationship between the State court action and the instant federal action. (*See* 4/20/2016 Order Remanding Case in No. 16–cv–1878.) On May 3, 2016, the Court denied Boothe and the other plaintiffs' motion for reconsideration. (*See* 5/3/2016 Order in No. 16–cv–1878.)

On October 3, 2016, Boothe filed her fourth voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Bankruptcy Court. *See* docket for *In re Boothe*, No. 1-16-44465 (Bankr. E.D.N.Y.).[14] The case was dismissed on December 6, 2016, after Plaintiff did not file the required documents. *See id.*, Dkt. 21.

On December 13, 2016, Plaintiff again appealed the Bankruptcy Court decision dismissing her case No. 16-44465 to this Court. *See* docket for *In Re: Claudette Boothe*, No. 16–cv–06862 (E.D.N.Y.). The Court *sua sponte* dismissed the case on March 3, 2017, as Boothe never filed a brief in support of her appeal and did not communicate with the Court for three months after filing the appeal. (3/3/2017 Order in No. 16–cv–6862.)

---

[14] Additionally, on October 3, 2013, Jody Ashton, Plaintiff's daughter, also filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Bankruptcy Court. *See* docket for *In re Ashton*, No. 1-13-46027 (Bankr. E.D.N.Y.). Ashton listed 3221 Church Ave. Brooklyn, N.Y., the address of the Brooklyn property, as her address.

## II.     Procedural History in the Instant Case

Plaintiff filed the Complaint in this action on February 23, 2016. (Dkt. 1 in No. 16–cv–900 (E.D.N.Y.).) The same day, she also filed a motion for a temporary restraining order seeking to stay the foreclosure sale of the Brooklyn Property. Because there was no showing in the record that Plaintiff had served Defendants with the summons and Complaint, the Court directed Plaintiff to do so. (2/24/2016 Order in 16–cv–900.) Plaintiff filed an Amended Complaint on March 9, 2016. Less than a week later, on March 15, 2016, Plaintiff filed a motion for leave to file a second amended complaint. The Court directed Plaintiff to file a second amended complaint by April 4, 2016. (3/16/2016 Order in 16–cv–900). However, Plaintiff never filed a second amended complaint. On March 23, 2016, Plaintiff filed another motion for a temporary restraining order and preliminary injunction seeking, *inter alia*, to set aside the foreclosure sale that had occurred on December 17, 2015. (*See* 3/25/2016 Order in 16–cv–900.) The Court denied Plaintiff's motion explaining, *inter alia*, that this Court does not have jurisdiction to review the order of foreclosure issued in Plaintiff's State court proceeding. (*Id.*) The Court further directed Plaintiff to show cause that she had complied with Judge Partnow's February 23, 2016 Order. (*See id.*) Plaintiff never complied with that Order. On August 1, 2016, Defendants' joint motion to dismiss was fully briefed.

## DISCUSSION

## I.     LEGAL STANDARD

Rule 12(b)(1) of the FRCP provides for the dismissal of a claim over which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

Under Rule 12(b)(6) of the FRCP, a defendant may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006) (per curiam) (quotations omitted), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). In ruling on a 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, that "'tenet is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 668). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 557). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570.

## II. The Court Lacks Subject Matter Jurisdiction

Having reviewed the parties' submissions and the extensive litigation history surrounding the Brooklyn Property, the Court finds that it lacks subject matter jurisdiction over this case under

the *Rooker–Feldman* doctrine. Under this doctrine, federal district and circuit courts lack subject matter jurisdiction over cases that essentially are appeals from State court judgments. *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("[T]he *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 n. 16 (1983))). The doctrine applies where a four-prong test is satisfied: (1) the federal court plaintiff lost in State court; (2) the plaintiff complains of injuries caused by a State court judgment; (3) the plaintiff invites district court review and rejection of that judgment; and (4) the State court judgment was rendered before the district court proceedings commenced. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). "Courts in this Circuit have consistently held that the *Rooker–Feldman* doctrine bars an attack on the judgment of a foreclosure action in state court." *Gurdon v. Bank*, No. 15–cv–5674, 2016 WL 721019, at *10 (S.D.N.Y. Feb. 23, 2016) (collecting cases), *report and recommendation adopted by* 2016 WL 3523737, at *5 (E.D.N.Y. Jun. 20, 2016).

Here, all four *Rooker–Feldman* requirements are met. First, Plaintiff lost in the State court Foreclosure Action (Def. Ex. B). *See Gunn v. Ambac Assur. Corp.*, No. 11–cv–5497, 2012 WL 2401649, at *12 (S.D.N.Y. Aug. 6, 2012) (finding the first requirement of *Rooker–Feldman* satisfied where the State court foreclosure proceeding concluded with plaintiff's loss of ownership or possession of property), *report and recommendation adopted by* 2012 WL 3188849 (S.D.N.Y. Aug. 6, 2012).

Second, Plaintiff is complaining of the loss of ownership of the Brooklyn Property caused by the judgment rendered by the State court in the Foreclosure Action (*see* Am. Compl. at ECF 7

¶ 37).[15] Plaintiff identifies the "nature of the case" to stem from the allegedly "fraudulent transfer" of the Brooklyn Property. (*See* Am. Compl. at ECF 2.) In an all too transparent effort to avoid the application of the *Rooker-Feldman* doctrine, Plaintiff asserts that she is "not really complaining of an injury caused by a state-court judgment, but of an injury caused by the winner's chicanery." (Dkt. 32 (Pl. Opp.) at ECF 6 ¶ 21.) Regardless of the label Plaintiff uses to describe the outcome of the Foreclosure Action, there is no question that Plaintiff is complaining of a State court judgment. For example, Plaintiff alleges, "[d]ue to gross judicial misconduct[,] my property preservations [sic] of my claims and *property interest eroded by the unjust decision of the trial judge in dated February 23rd 2016.*" (Am. Compl. at ¶ 37 (emphasis added).) As next discussed, the remedy Plaintiff seeks in this action further supports the Court's finding that Plaintiff is complaining of the State court's judgment in the Foreclosure Action.

Third, Plaintiff expressly invites this Court to reverse the Foreclosure Judgment, to "set aside the fraudulent transfer of [her] property" (*id.* at ¶ 1), to "set aside the referee's deed for fraudulent conveyance" (*id.* at ECF 13 (Section for "Prayer For Relief")), and to enter "judgment for the immediate restoration of plaintiff in possession of the quiet use and enjoyment of [the Brooklyn] property; set aside the [December 17] foreclosure auction . . . [and] to stay all proceedings in state court" (*id.* at ECF 16).

Fourth, the State court's Judgment of Foreclosure and Sale was entered on August 2, 2012, before Plaintiff commenced this action on February 23, 2016 (Def. Ex. B).

In sum, because each of the requirements of *Rooker–Feldman* has been satisfied, this Court lacks subject matter jurisdiction to consider Plaintiff's claims. *See Vossbrinck v. Accredited Home*

---

[15] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

*Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars [plaintiff's] claim. [Plaintiff] invites review and rejection of the state judgment." (internal quotation and alterations omitted)); *Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005) (summary order) (concluding that plaintiff's complaint "concerns allegations of various civil and constitutional rights violations but essentially amount[ed] to an objection to the disposition of the foreclosure action by the Supreme Court, Nassau County"); *Swiatkowski v. Bank of America, NT & SA*, 103 F. App'x 431, 432 (2d Cir. 2004) (affirming district court's dismissal, based on the *Rooker–Feldman* doctrine, of borrower's complaint against mortgage lenders alleging that defendants rejected their mortgage payments in violation of a settlement plan, conspired to force plaintiffs to leave their home, "deceived the court," and initiated a foreclosure action, *i.e.*, allegations that are nearly identical to those in Plaintiff's Amended Complaint); *see also Hall v. Bank of N.Y. Mellon*, No. 15–cv–7156, 2017 WL 1030710, at *4 (E.D.N.Y. Mar. 13, 2017) (finding that plaintiff's [ ] action was barred by the *Rooker–Feldman* doctrine where plaintiff alleged that defendants "violently terminate[d] his property rights protected in the original United States Constitution . . . without due process, and engaged in . . . intentional violation of established federal laws" where plaintiff had lost in his State court foreclosure action (internal quotation marks omitted)). The point of the *Rooker-Feldman* doctrine is that because Plaintiff had the opportunity to assert the claims or defenses relating to the foreclosure in State court, this Court should not disturb the State court's decision on those issues or any other issues or claims that would undermine or disturb that decision.

While Plaintiff frames her claims to be based on violations of constitutional rights, this is a desperate attempt to bring, once again, a lawsuit challenging the foreclosure of the Brooklyn

Property.[16]   In spite of the Court's March 26, 2016 Order, in which the Court explained that it

lacks jurisdiction to review the State court's order of foreclosure because of the *Rooker–Feldman*

doctrine, the only remedy Plaintiff seeks in this "civil rights" case is the "restoration of [her]

possession of [the Brooklyn Property]" and asks this Court to "set aside the foreclosure auction

[which transferred ownership of the Brooklyn property to Rossrock] . . . [and] stay all proceedings

in the state court."   (Am. Compl. at ECF 16).   "[I]t is abundantly clear that the whole purpose of

this action is to stop and undo the foreclosure judgment." *Swiatkowski v. Citibank*, 745 F. Supp.

2d 150, 165 (E.D.N.Y. 2010); *see also Wik v. City of Rochester*, 632 F. App'x 661, 661 (2d Cir.

2015) (summary order) (affirming district court's dismissal, pursuant to the *Rooker–Feldman*

doctrine, of plaintiff's Section 1983 complaint where plaintiff's real property had been foreclosed

on for non-payment of taxes and where State courts had issued a foreclosure order and an order

denying plaintiff's motion to vacate the foreclosures); *Ashby v. Polinsky*, 328 F. App'x 20, 20–21

(2d Cir. 2009) (summary order) (affirming district court's dismissal of plaintiff's Section 1983

complaint pursuant to the *Rooker–Feldman* doctrine when plaintiff complained of the foreclosure

on her property caused by a State court order); *accord Murphy v. GE Capital Asset Corp.*, 38 F.

App'x 86, 86–87 (2d Cir. 2002) (affirming district court's finding that plaintiff's suit brought under

---

[16] To the extent that Plaintiff intended to raise a RICO claim by conclusorily mentioning the act, the *Rooker–Feldman* doctrine still bars review of the claim. *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 423 n.2 (2d Cir. 2005) ("While it is true that plaintiffs never actually raised the federal claims of Section 1983, RICO and SLAPP violations before the state court, *Rooker–Feldman* precludes district court reviews of claims 'inextricably intertwined' with state court determinations.  The fact that plaintiffs raise new claims under federal statutes does not preclude a finding that they are barred by the *Rooker–Feldman* doctrine." (quoting *Zipper v. Tood*, No. 96–cv–5198, 1997 WL 181044, at *3 (S.D.N.Y. Apr. 14, 1997)).  Moreover, the Amended Complaint does not sufficiently plead civil RICO allegations.  *See Spiteri v. Russo*, 12–cv–2870, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013) ("Courts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies.").

RICO was barred by the *Rooker–Feldman* doctrine where plaintiff "alleged that the defendants had fraudulently foreclosed a mortgage on his property by presenting fraudulent mortgage documents to the state courts and by deliberately failing to provide him with proper notice of the foreclosure action"); *id*. (noting that the *Rooker-Feldman* doctrine "covers both matters directly decided in the state court and matters 'inextricably intertwined' with the determinations of the state court") .

To the extent that Plaintiff is claiming that the State court acted unconstitutionally by entering a Foreclosure Judgment, by finding Rossrock to be the rightful owner of the Brooklyn Property, or by vacating the Civil Court's February 8 Order, Plaintiff should have appealed those decisions in State court. *See Swiatkowski*, 745 F. Supp. 2d at 170.

Accordingly, the Court grants Defendants' motion to dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## III.    Section 1983 Claims Are Inadequately Pleaded

Even if the Court had found that *Rooker-Feldman* does not apply to this case and that the Court has jurisdiction over this matter, it would dismiss Plaintiff's claims, alleging due process and equal protection violations under 42 U.S.C. § 1983 ("Section 1983"), for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

### A.    Amended Complaint fails to adequately allege State action by Defendants

Section 1983 provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of State law. 42 U.S.C. § 1983. "[T]he core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights *by state actors*.'" *Hardy v. N.Y. City Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (emphasis added). In other words, Section 1983 "constrains only [government] conduct, not the 'acts of private persons or entities.'" *Hooda v.*

*Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). Private conduct, "no matter how discriminatory or wrongful," is generally beyond the reach of Section 1983. *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted); *Gault v. NYPD*, No. 15–cv–935, 2016 WL 3198281, at *2 (E.D.N.Y. Jun. 8, 2016).

Here, Rossrock, Flushing Bank, and Jaspan Schlesinger LLP are private corporations, and thus, are not State actors for purposes of 42 U.S.C. § 1983. *See, e.g., Brown v. Chase Bank*, No. 13–cv–5309, 2013 WL 5537302, at *2 (E.D.N.Y. Oct. 17, 2013) (noting that private corporations do not act under color of State law and dismissing plaintiff's Section 1983 claims against banks). Moreover, every one of the named individual Defendants, who are Rossrock employees or attorneys employed by the law firm representing Rossrock, are private individuals whose conduct is not attributable to the State. Thus, to succeed on her Section 1983 claims, Plaintiff must, as a threshold matter, establish that the challenged conduct of Defendants was taken under color of State law.

"The traditional definition of acting under color of state law requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (citation omitted). This Circuit has recognized three scenarios in which the conduct of a nominally private entity may be attributed to the State—where: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ("the compulsion test"); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by

the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Prog., Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

The Amended Complaint asserts its claims against the strictly private Defendants and utterly fails to allege that Defendants' actions are attributable to the State. While Plaintiff has a myriad of conclusory allegations that Defendants conspired with "the court system," a trial judge, members of the New York Police Department ("NYPD") and the "building department" to evict Plaintiff from the Brooklyn Property, to "issue fines and/or violations," to "commit extrinsic fraud on the State of New York Courts," "to cause [Plaintiff] to be jailed," and to "assassinate [Plaintiff's] character," these conclusory statements are insufficient for Plaintiff to plausibly allege that Defendants acted under color of State law. (Am. Compl. ¶¶ 35, 37, 39–58, 59–60, 63, 66–68, 70.) She also alleges that "Rossrock . . . chose to commit more violations including the unlawful use of Force, Threat, duress by twisting the law" by using the NYPD to "illegally and forcefully evict plaintiff from her building without due process at law" (*Id.* ¶ 58) and that she has "captured video footage of some of the NYPD officers . . . aiding and abetting Gill Castro[,] the enforcer of Rossrock [ ] Criminal Corporate Enterprise and what appears to be police friends of Gill Castro acting as if they have a personal stake" in evicting Plaintiff (*Id.* ¶ 59). However, Plaintiff does not allege when or how the NYPD used force against her or threatened her. She does not allege what actions of the Defendants or the NYPD should be construed as "extrinsic fraud" or conduct attempting to jail her or "assassinate" her character. The content of the video footage that purportedly recorded NYPD aiding and abetting Rossrock in their illegal enterprise is not described or mentioned in the Amended Complaint. While Plaintiff makes many allegations, they are all conclusory and they do not plausibly allege that Defendants acted under color of State law.

Indeed, given the existence of the State court order of foreclosure against Plaintiff with respect to the Brooklyn Property, the only plausible inference that can be drawn, even assuming *arguendo*, that NYPD officers assisted in Plaintiff's eviction is that the officers were acting lawfully pursuant to the State court eviction order. Therefore, Plaintiff's failure to adequately allege facts in support of her Section 1983 claims provides an additional basis for dismissal.[17]

## IV.  Section 1985 Conspiracy Claim Is Inadequately Pled

Plaintiff also asserts a conspiracy claim under 42 U.S.C. § 1985(3) ("Section 1985(3)"). Plaintiff's conclusory allegations are also insufficient to state a plausible claim of conspiracy under Section 1985(3). "Section 1985 permits an individual to bring suit for injuries incurred due to conspiracies formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Roffman v. City of N.Y.*, No. 01–cv–8601, 2002 WL 31760245, at *5 (S.D.N.Y. Dec. 10, 2002) (citing 42 U.S.C. § 1985(3)). To state a claim under Section 1985(3), a plaintiff must allege "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either

---

[17]  Furthermore, the Amended Complaint is devoid of any facts plausibly suggesting that Defendants violated Plaintiff's due process rights or equal protection rights. As for Plaintiff's abuse of process claim, Plaintiff alleges that Defendants "enlist[ed] the NYPD to arrest and [to] threaten to jail the plaintiff in contempt of court [ ] simply for attempting to protect and exercise her constitutionally protected rights." (Am. Compl. at ¶ 63.) However, other than her conclusory statements, Plaintiff does not provide allegations of when she was arrested, who took part in her arrest, who threatened her with imprisonment for being in contempt of court, or any other circumstances surrounding such threats of arrest.

To the extent that Plaintiff intended to assert a tort claim of abuse of process that is based on State law, *see E. Equip & Servs. Corp. v. Factory Point Nat'l Bank, et al.*, 236 F.3d 117, 119 (2d Cir. 2001) (per curiam), as discussed *surpa* and *infra*, the Court does not have jurisdiction to hear Plaintiff's State law claim.

injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (summary order) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983)).

Even under a liberal reading of the Amended Complaint, it is plainly devoid of factual allegations demonstrating that there was any agreement or meeting of the minds by or amongst Defendants to deprive Plaintiff of equal protection of the law. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (citation and internal quotation marks omitted)); *Nguyen v. Milliken*, 104 F. Supp. 3d 224, 231 (E.D.N.Y. 2015) (dismissing *pro se* plaintiff's Section 1985(3) claim where there was no basis to find that the alleged conspiracy stemmed from invidiously discriminatory animus or that there was a "meeting of the minds"). At most, Plaintiff alleges that some of the individual Defendants—specifically, Frank Delmore and Kevin Etzel, employees of Jaspan Schlesinger, and Rossrock—conspired with NYPD Officers[18] Welch, Martinez, and Gonzalez "by violating laws and duties" and by committing "extrinsic fraud on the State of New York Courts." (Am. Compl. ¶¶ 66–67.) These conclusory allegations are not enough. *See Cullen v. City of New York*, No. 07–cv–3644, 2011 WL 1578581, at *4 (E.D.N.Y. Apr. 26, 2011) ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."); *Tsabbar v. Eason*, No. 04–cv–10215, 2005 WL 2298177, at *2 (S.D.N.Y. Sept. 20, 2005) (finding plaintiff's allegations conclusory and dismissing his Section 1983 claim

---

[18] The Amended Complaint does not identify these officers by their full name or name them as defendants. Plaintiff only refers to them as "proposed Defendants" and alleges that the named Defendants "used the court system acting under color of state law to enlist the NYPD to arrest and threaten to jail [her] in contempt of court [ ] simply for attempting to protect and exercise her constitutionally protected rights." (Am. Compl. at ECF 13 ¶ 63.)

where the complaint alleged that defendant and the New York City Sheriff conspired to deprive plaintiff of his personal property and to damage items in plaintiff's apartment in the process of plaintiff's eviction).

Moreover, Plaintiff fails to allege "some racial or perhaps otherwise class-based, invidious discriminatory animus [underlying Defendants' actions]," as required for her Section 1985 claim. *Robinson*, 508 F. App'x at 9 (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006)) (internal quotation marks omitted).

*        *        *

In sum, Plaintiff has failed to state a claim under either Section 1983 or 1985(3). The Court, therefore, grants Defendants' motion to dismiss both Plaintiff's Section 1983 and 1985(3) claims.[19]

## V. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Counts 3 and 4 of the Amended Complaint are State law claims based on the New York State and New York City False Claims Act. Because the Court does not have subject matter jurisdiction over Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her State law claims. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *see also Swiatkowski*, 745 F. Supp. 2d at 173 n.14 (stating that "the Court declines to retain jurisdiction

---

[19] As the Court finds that Plaintiff has not stated plausible Section 1983 or 1985(3) claims, the Court need not address Defendants' two-sentence, throw-away argument that Plaintiff is collaterally estopped from bringing her Section 1983 and 1985(3) claims. (Dkt. 33, Def. Mem. at 21–22.)

over any remaining state law claims plaintiff is attempting to assert given the absence of any federal claims that survive[]" after dismissing plaintiff's federal claims based on the *Rooker–Feldman* doctrine, collateral estoppel, and *res judicata*).[20]

## VI.   Amendment of the Complaint Would be Futile

Plaintiff will not be allowed to amend her complaint a second time because any amendment would be futile, given that dismissal is warranted based on jurisdictional grounds.   *See Cunningham v. Bank of N.Y. Mellon N.A.*, No. 14–cv–7040, 2015 WL 4104839, at *4 (E.D.N.Y. Jul. 8, 2015) (denying *pro se* leave to replead after dismissal under *Rooker–Feldman*); *Gunn v. Ambac Assur. Corp.*, No. 11–cv–5497, 2012 WL 3188849, at *3 (S.D.N.Y. Aug. 6, 2012) (adopting a report and recommendation and denying plaintiff leave to amend because recasting the claims or adding other parties "would not change the gravamen of his complaint, which is to overturn the state court foreclosure proceeding").   In light of Plaintiff's request, on March 16, 2016, this Court gave Plaintiff leave to file a second amended complaint by April 4, 2016, but Plaintiff never filed one.   (*See* 4/11/2016 Order.)   The Court explained that Plaintiff was precluded from amending her complaint after April 4, 2016, absent a showing of good cause.   (*Id.*)   Plaintiff's statement in her opposition to Defendants' motion that she "reserves all of her rights to amend her complaint" (*see* Dkt. 32 at ECF 7 ¶ 25) does not meet the requisite showing of good cause.   *See Babb v. Capital source, Inc.*, 588 F. App'x 66, 68–69 (2d Cir. 2015) ("Because plaintiffs were alerted to the deficiencies in their complaint at a pre-motion conference before filing the [second

---

[20] To the extent that Plaintiff raises a common law fraud claim, "[a]lthough a claim of fraud may preclude the Court from applying *Rooker–Feldman*, it does so only when the complaint 'does not attempt to reverse or undo a state court judgment.'"   *Barbato v. U.S. Bank Nat'l Assoc.*, 14–cv–2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (quoting *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015)).   As previously discussed, the remedy that Plaintiff seeks for every claim is that the Court undo the State court foreclosure judgment.   Thus, Plaintiff's fraud claim is also barred by the *Rooker–Feldman* doctrine.

amended complaint], and because the district court was clear at that conference that it would not allow plaintiffs any more amendments after the [second amended complaint], the denial of another attempt to amend was not an abuse of discretion.").

## VII. Plaintiff is Enjoined from Filing Further Submissions Related to the Brooklyn Property or the named Defendants

"When a litigant files numerous complaints based on the same events, the Court may issue an injunction preventing the litigant from future filing in the venue without permission from the Court." *Weaver v. Vaughn*, No. 11–cv–3281, 2012 WL 4465255, at *9 (E.D.N.Y. Aug. 30, 2012) (citing *Malley v. N.Y. City Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir. 1997)). This is the third action that Plaintiff has brought in this Court in relation to the Brooklyn Property and the foreclosure sale of that property. There is a demonstrated pattern of Plaintiff and her family members repeatedly filing actions in this Court, the New York State Supreme Court, and the Bankruptcy Court, all for the singular purpose of blocking the foreclosure sale of the Brooklyn Property and opposing Rossrock's ownership of the property. Furthermore, Plaintiff has demonstrated a willingness to make false and/or baseless assertions and representations in court filings and to flagrantly disregard and disobey court orders and directives. For example, this Court directed Plaintiff to show cause by April 4, 2016, that she complied with Judge Partnow's February 23, 2016 order requiring her to seek prior permission from Judge Partnow before filing any motion in any court other than the Supreme Court of Kings County that would affect Rossrock's rights as the owner of the Brooklyn Property. (*See* March 26, 2016 Order.) Plaintiff never complied with this directive. Instead, Plaintiff submitted eight exhibits along with an "Affidavit," in which she stated, "I do not consent to give up my unalienable rights and be denied due process," and went on to state that "some of the [State court] judges['] orders have been authored by Rossrock[] . . . ." (Dkt. 27, at ECF 1–2.) There is no question that Plaintiff's litigation history has caused a waste of judicial resources. In

addition to Plaintiff's Complaint and Amended Complaint, Plaintiff has filed with this Court two motions for Temporary Restraining Order (Dkts. 2, 12), a supplemental affidavit and memorandum (Dkt. 23), and non-responsive submissions with numerous exhibits in response to the Court's directive to show cause that Plaintiff complied with Judge Partnow's February 23, 2016 Order. Plaintiff has also filed at least four actions in Bankruptcy Court. By filing numerous frivolous actions and motions in this Court, the Bankruptcy Court, and State court, Plaintiff has stayed multiple scheduled foreclosure sales. *See, e.g.*, *In re Claudette Boothe*, No. 12-47480-608 (Bankr. E.D.N.Y.); *In re Claudette Booth*, No. 14-40363 (Bankr. E.D.N.Y.); *In re Boothe*, No. 16-44465 (Bankr. E.D.N.Y.). And at least in one instance, Plaintiff voluntarily dismissed the case soon after filing her bankruptcy petition. *See* docket for *In re Claudette Boothe*, No. 12-47480-608 (Bankr. E.D.N.Y.) (less than two months after filing the petition).

"[T]he unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (citation and internal quotation marks and alterations omitted). Here, Defendants have specifically requested in their motion to dismiss that this Court impose a filing injunction on Plaintiff. (*See* Dkt. 33–11 at 24, No. 16–cv–900.) Because Plaintiff was served with Defendants' motion (*see* Dkt. 31, No. 16–cv–900), she was given notice of Defendants' request for a filing injunction, and had the opportunity to respond to the filing injunction request. Indeed, Plaintiff has responded, asserting that "Defendants are not entitled to an injunction as [it] will only further support the deprivation of plaintiff's right to access the courts." (Dkt. 32 at ECF 5 ¶ 12.) Based on this notice and opportunity to be heard, as well as the history of Plaintiff's undeterred abuse and manipulation of the judicial process, the Court finds that there is no justification or need for Plaintiff to be given another opportunity or additional time

to respond to Defendants' filing-injunction request.  *See Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. School Dist.*, 506 F. App'x 65, 70 (2d Cir. 2012) (summary order) (finding that district court did not abuse its discretion in enjoining plaintiff from filing further federal complaints where plaintiff was given notice of the possible injunction through defendants' motion to dismiss).  As Plaintiff's litigation history demonstrates, she certainly has not been "deprived" of her right to access courts.  "[F]ederal courts have limited resources.  Frequent frivolous filings work to diminish the ability of the courts to manage their dockets for the efficient administration of justice."  *Mallgren v. Bloomberg*, No. 13–cv–1466, 2013 WL 1873334, at *3 (E.D.N.Y. May 2, 2013).  The Court need not prolong its consideration of whether a filing injunction is appropriate.

It is hereby ordered that the Clerk of Court refuse to accept any submission signed by Plaintiff Claudette Boothe, Andre Audige (Plaintiff's husband), or Jody Ashton (Plaintiff's daughter), if the submission relates, in any way, to the property located on 3221 Church Avenue, Brooklyn, NY 11226, unless Plaintiff, Audige, or Ashton (1) obtain leave of the Court to file such papers, and (2) provide proof of leave from Judge Partnow of the New York Supreme Court to file the action.  *See New York v. Best*, No. 14–cv–3634, 2014 WL 5305991, at *3 (E.D.N.Y. Oct. 15, 2014) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." quoting *In re Martin–Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)); *see also Lipko v. Christie*, 94 F. Appx. 12, at 14 (2d Cir. 2004) (summary order) (imposing a leave-to-file requirement in the Court of Appeals for the Second Circuit "because existing injunctions and sanctions in state court have not deterred [plaintiff] from initiating frivolous complaints").  This filing injunction shall also apply to any filing Plaintiff, Audige, or Ashton seeks to make, relating to the property located on 3221 Church Avenue, Brooklyn, NY 11226, in the United States Bankruptcy Court in the

Eastern District of New York. Plaintiff is warned that filing of additional frivolous motions and actions in violation of the Court's order may result in the imposition of monetary sanctions. *See, e.g., Manti's Transp. v. Kenner*, No. 13–cv–6546, 2015 WL 1915004, at *1 (E.D.N.Y. Apr. 27, 2015) (imposing a filing injunction and fifteen thousand dollar ($15,000) sanction on plaintiff); *Armatas v. Maroulleti*, No. 08–cv–0310, 2016 WL 3460367, at *6 (E.D.N.Y. Jun. 21, 2016) (warning plaintiff that "any attempt to re-litigate his claims . . . will be met with the imposition of further monetary sanctions").

## VIII.   The Court Denies Plaintiff's Request to Appoint Counsel

Plaintiff notes in her opposition paper that this Court "has the power and authority to appoint legal representation, or perhaps legal counsel which Plaintiff may ask legal questions, to which Plaintiff would greatly welcome and would have no objection." (Dkt. 32 at ¶ 5.) To the extent Plaintiff is asking the Court to appoint her counsel in this matter, the Court declines to do so.

There is no right to counsel in a civil case, and "[t]he determination of whether appointment of counsel is necessary rests with the discretion of the court." *In re Martin-Trigona*, 737 F.2d at 1260. One of the factors that the Court considers is the merits of Plaintiff's claims. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) ("The factor which command[s] the most attention . . . [is] the merits."); *Phelan v. Sullivan*, 541 F. App'x 21, 25 (2d Cir. 2013) (summary order) (affirming district court's denial of motion for appointment of counsel where the plaintiff "had not demonstrated that his claims were likely to succeed on the merits"). In light of Plaintiff's history of litigation and the absence of any meritorious claims, Plaintiff's request for *pro bono* counsel is denied.

## CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed for lack of subject matter jurisdiction. Fed. R. Civ. 12(h)(3). Furthermore, the Court orders that Plaintiff, Andre Audige, and Jody Ashton are enjoined from filing any motions, petitions, or actions in the District Court and Bankruptcy Court for the Eastern District of New York, relating to the property located at 3221 Church Avenue, Brooklyn, New York 11226, without first obtaining leave of this Court *and* leave of the Honorable Mark I. Partnow of the New York Supreme Court. The Clerk of Court is directed to return to Plaintiff, without filing, any submission that is received without an application seeking to file. 28 U.S.C. § 1651. Nothing herein shall be construed to prohibit Plaintiff from filing an appeal of this Order. However, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.


SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 23, 2017
      Brooklyn, New York